FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 06, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

TIFFANY SIMONE M.,[1]

Plaintiff,

v.

FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No: 1:25-CV-03219-RLP

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION FOR FURTHER ADMINISTRATIVE PROCEEDINGS

BEFORE THE COURT is an appeal from an Administrative Law Judge (ALJ) final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 15. After initial briefs were filed, ECF Nos. 15, 21, and 22, the Court requested supplemental briefing. ECF No. 25, 26. The Court has reviewed the submissions of the parties and considered the matter without oral argument.

[1] Plaintiff's first name and last initial are used to protect her privacy.

The parties agree the ALJ committed reversible error but dispute the appropriate remedy. Because there are outstanding issues and conflicts in the evidence which must be decided by the ALJ, and because it is not clear from the record that Plaintiff is disabled, the Court remands the case for further proceedings. Therefore, Ms. M.'s brief, ECF No. 15, is granted in part as to remand, and the Commissioner's brief requesting remand, ECF No. 21, is also granted.

## BACKGROUND

Ms. M. was 23 years old on the alleged onset date of December 26, 2012. Tr. 3669. She has a GED and has work experience as a sales representative, cashier, telemarketer, cook helper, waitress, dining room attendant, customer service representative, sales attendant, medication technician, and merchandise displayer. Tr. 66, 87.

Ms. M. filed this claim for disability insurance benefits and supplemental security income on February 3, 2015, alleging an onset date of December 28, 2012. Tr. 336-50. She alleged disability based on bipolar/manic-depressive disorder with panic and anxiety disorder; difficulty getting along with others; PTSD; numerous physical limitations; hearing issues, vertigo, and partial blindness. Tr. 394. The claim was denied initially and upon reconsideration. Tr. 173-84.

Ms. M. appeared at a hearing in February 2017 and testified she is unable to work due to difficulties both being around others and working alone. Tr. 69. She testified she has physical problems of instability while standing, pain in her back,

and swelling in her feet. Tr. 84. On January 8, 2018, the ALJ issued an unfavorable decision, Tr. 12-42, and the Appeals Council denied review. Tr. 1-6. Ms. M. appealed and on March 4, 2020, United States District Judge Fred Van Sickle reversed the ALJ's decision and remanded for additional proceedings. Tr. 1898-1923.

Ms. M. appeared at a second hearing in June 2021, Tr. 1825-60, and alleged her condition had stayed the same except she had developed an anger problem she did not have before. Tr. 1846. Physically, she alleged major issues include migraines, back pain, and knee pain. Tr. 1853. The ALJ issued a second unfavorable decision on September 1, 2021. Tr. 1777-1818. The Appeal Council denied review, Tr. 3773-80, and Ms. M. again appealed to the United State District Court. On February 23, 2023, pursuant to the stipulation of the parties, the matter was again remanded for additional proceedings, Tr. 3719-3724, and the Appeals Council remanded to a different ALJ. Tr. 3728.

A third hearing occurred in December 2024. Ms. M. did not appear; her representative indicated he had no contact with her. Tr. 3687-3707. Medical experts Dr. Rubin and Dr. Berger and a vocational expert testified. Another hearing occurred in February 2025 for additional vocational expert testimony. Tr. 3708-18. Ms. March again did not attend but a representative appeared on her behalf. On February 28, 2025, the ALJ issued a third unfavorable decision. Tr. 3642-86. The Appeals

Council declined to assume jurisdiction, Tr. 3635-41, so the February 28, 2025 decision is the Commissioner's final decision before this Court for review.

## STANDARD OF REVIEW

This Court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). If the evidence in the record "is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, if the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's residual functional capacity (RFC), which is the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If not, the analysis proceeds to step five and the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Ms. M. engaged in substantial gainful activity during the following periods: April 2017 through November 2018 and 2021 through at least 2023. Tr. 3684. The ALJ also found, however, that there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity. Tr. 3649. At step two, the ALJ found that Ms. M. has the following severe impairments: diabetes mellitus, obesity, degenerative joint disease and meniscus tears of the knees, asthma, migraines, degenerative disc disease of the lumbar spine-mild, depression/bipolar disorder, anxiety disorder. Tr. 3649.

At step three, the ALJ found that Ms. M. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 3650. With respect to the RFC, the ALJ found Ms. M. has the capacity to perform light work with the following limitations:

> The claimant can lift and/or carry 10 pounds frequently and 20 pounds occasionally. She could walk for 3 hours at a time for a total of 6 hours and stand for 4 hours at a time for a total of 7 hours with no limitation in sitting in an 8-hour workday. She would be limited to occasional climb[ing] of ramps or stairs, but no climbing of ladders, ropes, or scaffolds. She cannot work around hazards such as unprotected heights and dangerous machinery. She can occasionally balance, stoop, kneel, and crouch but can do no crawling. She is limited to frequent reaching, handling, fingering, and feeling bilaterally. She should not work in an environment that exceeds the moderate (level 3) noise level. She can perform no work that requires bright lights such as spotlights. She must avoid exposure to extremes of cold, heat, and humidity. She should avoid exposure to respiratory irritants such as dust, fumes, odors, and gases. She should perform work that does not require commercial driving. The claimant is able to remember, understand, and carry out simple tasks or instructions. She can have occasional superficial interaction with the general public, i.e. brief greetings and conversations, nothing in depth such as negotiation or mediation type tasks. She can work in proximity to co-workers but not perform tasks that require teamwork. She can perform work that requires only simple, work related decisions with few if any workplace changes.

Tr. 3563.

At step four, the ALJ found that past relevant work is not established. Tr. 3668. At step five, after considering Ms. M.'s age, education, work experience, and the RFC, the ALJ found there are other jobs that exist in significant numbers in the

national economy that Ms. M. can perform such as marker, office helper, and router. Tr. 3669-70.

Based on the adverse finding at step five, the ALJ determined that Ms. M. has not been under a disability, as defined in the Social Security Act, from December 26, 2012, through the date of the decision. Tr. 3670.

## ANALYSIS

Ms. A. contends the ALJ erred because the RFC finding is consistent with disability, so benefits should be awarded. She also contends the ALJ erred by failing to properly assess her work activity at step 1, her symptom testimony, and the medical opinion evidence. ECF No. 15. She requests an award of benefits for the closed period of December 28, 2012 to December 31, 2020. *Id.* at 2. The Commissioner concedes the ALJ erred by giving insufficient reasons for discounting the opinion of Starla Stone, LICSW. ECF No. 25. However, the Commissioner contends Plaintiff's other arguments fail on the merits and therefore remand is the appropriate remedy. *Id.*

Given the parties' positions, the primary issue is whether the Court should remand for further proceedings or an award of benefits. The Social Security Act permits the district court to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014). When a district court reverses the decision of the Commissioner of Social Security, "the proper course,

except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir.2015) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). Although a court should generally remand to the agency for additional investigation or explanation, the court also has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014).

Having reviewed the record and Ms. M.'s arguments, the Court concludes the record in this case is somewhat mixed. As the ALJ noted, there are inconsistencies in the record. It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Further, when it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). Given the evidence of Ms. M.'s work history and the mixed evidence in the record, it is not apparent that disability is conclusive. Therefore, the Court concludes that remand is the appropriate remedy. *See Treichler*, 775 F.3d at 1105.

1. RFC Finding

Ms. M. contends the RFC finding that she "can work in proximity to co-workers but not perform tasks that require teamwork" requires a finding of disability. ECF No. 15 at 4. The vocational expert testified that a hypothetical person with that limitation could perform work in the national economy such as marker, office helper, and router, Tr. 3713-14, which is consistent with the ALJ's step five finding. Tr. 3669-70. Ms. M.'s counsel asked the vocational expert if the limitation of able to work in proximity to co-workers but perform no teamwork tasks applies to "the first 30 days when they're getting trained, and going through HR meetings and that sort of time period, if they're not able to have any coordination with their coworkers, is that going to be consistent with competitive work or would that be an issue during that early time period?" Tr. 3716. The vocational expert testified, "[t]hat would be an issue during that early period." Tr. 3716. The ALJ asked a follow-up question: "If a person is doing things like with HR, is that considered teamwork?" The vocational expert testified that "[a]ctually, it's not. No." Tr. 3716.

Ms. M. argues that although the vocational expert clarified that HR meetings are not teamwork, "she did not otherwise revise her statement regarding training." ECF No. 15 at 4. According to Ms. M., this means that she is effectively limited to a string of short-term jobs because she is unable to complete the training period and is therefore disabled. *Id.* The Commissioner argues the question from Ms. M.'s counsel referred to "coordination," not "teamwork," so the vocational expert did not testify

that the teamwork restriction is incompatible with work during an initial training. ECF No. 25 at 3. Ms. M. counters that "coordination" and "teamwork" mean the same thing, citing dictionary definitions of the terms. ECF No. 26 at 7-8.

The Court concludes the vocational expert's testimony on this issue should be clarified on remand. It is not apparent from the vocational expert's testimony that an individual with the limitations in the RFC finding cannot work. Nothwithstanding the confusion created by counsel's use of the term "coordination" rather than the term "teamwork" which was used in the hypothetical, the impact of the teamwork limitation on the ability to complete training overall is not established in the record. If the same limitation is included in the RFC on remand, the ALJ should ensure its impact on Ms. M.'s ability to work is clearly set forth by the vocational expert's testimony.

### 2. Substantial Gainful Activity

The ALJ found Ms. M. engaged in substantial gainful activity from April 2017-November 2018 and 2021 until at least 2023 based on her earnings record. Tr. 3648-49. Her most significant work was for Emeritus Corporation in 2017 and 2018, Yakima Operations LLC in 2018, Total Care Inc., in 2018, and Stanley Steemer International from 2021-23. Tr. 3648; *see* Tr. 2083-87, 2091-92, 3909-3915. The ALJ observed that it "appears that the claimant has participated in SGA several times, particularly between April 2017 and November 2018, some of which may be

characterized as an unsuccessful work attempt or trial work period, but she did not appear to testify or provide sufficient information to establish such." Tr. 3649.

*a. Step One*

Ms. M. contends the ALJ did not properly assess step one by failing to consider whether her work activity during the period at issue was with special conditions or an unsuccessful work attempt. ECF No. 15 at 4-7. The Commissioner argues that even if the ALJ erred at step one, any error would be harmless because the ALJ continued the sequential evaluation and considered the entire period from the alleged onset date through the date of the decision. ECF No. 25 at 4.

The Court agrees with the Commissioner. At step one, the ALJ acknowledged that some portion of Ms. M.'s work might be characterized as an unsuccessful work attempt or trial work period, particularly her work in 2017 and 2018, but concluded that was not established by the evidence in the record. Tr. 3649. Nevertheless, the ALJ concluded, "[g]iven the clarity issues and period she was not engaged in SGA, I have continued through the sequential evaluation period." Tr. 3649. Ms. M. argues there is evidence of an unsuccessful work attempt, ECF No. 15 at 5, citing her testimony that her 2017 job ended an outburst because another employee continually touched her after she asked him not to, Tr. 1849-50. In November 2017, she told a nurse practitioner that she lost the job due to a "nervous breakdown." Tr. 2313.

Even if Ms. M. is correct, the purported error would not establish Ms. M. is disabled or result in the remedy of an award of benefits. The remedy for an error at step one is to proceed with the sequential evaluation, which is exactly what the ALJ did. When an ALJ proceeds to the next step of the sequential evaluation process, any error at that step is harmless in the ALJ's ultimate nondisability finding. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008). However, as discussed below, the ALJ's did not err in considering Ms. M.'s work activity.

b. *Work Activity*

At the 2021 hearing, Ms. M. testified that though her condition had not gotten better, she decided to "go off" her medication because she needed to support herself and find a place to live, and so she returned to work. Tr. 1846. Ms. M. testified she returned to work in April 2017 part-time for a security company recording truck weights and printing paperwork. Tr. 1837-38. That job ended because she had an outburst at another employee who was too friendly and continued to touch her after she asked him to stop. Tr. 1849. She was suspended and eventually let go when she slammed a file drawer into his leg and made him bleed. Tr. 1849-50.

From the end of 2017 to the end of 2018, approximately 10 months, she worked as the lead medical technician at an adult family care home. Tr. 1838-39. During 2018, she worked two jobs, one a morning shift for four hours and the other an evening shift. Tr. 1842. She testified she got into several altercations with

coworkers and a resident's family member while working as a medical technician and almost lost her job. Tr. 1840. According to Ms. M., because she was "the person they relied on for the training," she only received probation and was penalized with reduced hours. Tr. 1840-41. Eventually, she was arrested for identity theft related to one of her jobs, spent a night in jail, "that also ended my employment with both of my employers." Tr. 1841, 1844.

The ALJ considered Ms. M.'s work activity in evaluating her symptom testimony and found she had engaged in substantial gainful activity. Tr. 3660-61. Even if Ms. M.'s work activity was not substantial gainful activity, "[a]n ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding that the ALJ properly considered a claimant's testimony that she was able to work occasional eight-hour shifts even though the work activity did not amount to substantial gainful activity). Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988).

Ms. M. argues her 2017-18 work as a medication technician was accommodated work. ECF No. 15 at 6-7. Ms. M. testified she had many accommodations, including fewer or easier duties and 15-minute breaks every hour or so for snacks related to her diabetes, to check her blood sugar, and to take

insulin. Tr. 1852, 2142. She contends this was a special work environment and should not have been considered SGA.

The ALJ reviewed the record regarding Ms. M.'s diabetes and noted the record does not reflect any reports to medical providers about needing breaks during the day for diabetes treatment. Tr. 3660. She denied symptoms such as dizziness, sweats, or headaches related to diabetes, and her treating physician noted no discussions of frequent breaks. *Id.* (citing e.g., Tr. 2778, 2783, 2829). In August 2018, another treating physician described her diabetes as "without complication," Tr. 2782, which the ALJ found inconsistent with her allegations. In November 2018, after a work-related back injury, she told her treating provider she wanted to be released to work "without any limitations." Tr. 2777. The ALJ found the contemporaneous treatment record which does not mention needing breaks at work more persuasive than her later allegations.

Ms. M. points out one record from November 2018 indicating she checked her blood sugar at work and it was in the 400s. Tr. 3311. She essentially argues the absence of medical records confirming her testimony regarding frequent breaks is irrelevant because social security rules indicate the claimant "is the primary source for vocational documentation." Social Security Ruling 24-2p, 2024 WL 3291790,

*5 (June 6, 2024).[2] However, the ruling also states that while the individual is the primary source of information concerning work history, "we consider all available evidence and information." *Id.* The ALJ's consideration of this evidence, while perhaps not clear and convincing on its own, is not erroneous.

Furthermore, the ALJ observed that Ms. M. described doing a greater level of activity in her past work than indicated in the RFC finding. Tr. 3660. As a medication technician, Ms. M. reported she was required to lift up to 100 pounds, walk four hours a day, stand for two hours a day, and she engaged in significant interaction with residents, coworkers, medical providers, and family members of patients. Tr. 2149-50. Ms. M. contends this is mitigated by her testimony that she got into several altercations with coworkers and a resident's family member almost lost her job. Tr. 1840. However, Ms. M. testified she was "the person they relied on for the training," so she only received probation and was penalized with reduced hours. Tr. 1840-41. To the extent this reflects social limitations, the ALJ indicated that such limitations were included in the RFC. Tr. 3660. And, although Ms. M. said she was not a supervisor, Tr. 2149, she was the lead medical technician and described being responsible for training others, which the ALJ

---

[2] Ms. M. cites Social Security Ruling 82-62, ECF No. 15 at 7, but that ruling was rescinded and replaced with Social Security Ruling 24-2p.

considered as evidence of her responsibilities and contact with others greater than included in the RFC. Tr. 3660.

The ALJ also reasonably considered the reasons Ms. M. stopped her 2017 and 2018 employment. In 2017, she was terminated after an outburst due to unwanted touch from an older coworker, resulting in an injury to the other employee when she slammed a file cabinet drawer into his leg. Ms. M. frames this response as a mental health symptom, ECF No. 15 at 8, while the ALJ found that her response was warranted given the unwanted contact. Tr. 3661. Further, the ALJ indicated that to the extent Ms. M.'s response reflects a limitation, it is accommodated by the RFC finding limiting social contact. Tr. 3661. With regard to the medical technician position, she testified she was arrested for identity theft related her job, spent a night in jail, "that also ended my employment with both of my employers." Tr. 1841, 1844. The ALJ's conclusions about the reasons these jobs ended are based on the record and are a reasonable interpretation of the evidence.

Lastly, the ALJ addressed Ms. M.'s argument that her work history reflects a pattern of short-term jobs interrupted by her mental health symptoms. Tr. 3661. The ALJ found the evidence does not support this theory because there is no specific improvement in her mental health such that she could work, then an exacerbation causing her to stop working, followed by another improvement. Tr. 3661. As previously noted, the ALJ found she did not lose her jobs due to her impairments. Tr. 3661. However, Ms. M. points out there are five years of records from her

alleged onset date until she worked in 2017 where she held short-term jobs, and most of the ALJ's analysis focuses on 2017 forward. Because this matter is remanded on other grounds, on remand the ALJ should address the period before 2017 with more specificity.

3. Symptom Testimony

Ms. M. contends the reasons given by the ALJ are not sufficient and that benefits should be awarded on that basis. ECF No. 15 at 7-14. The Commissioner contends the ALJ provided valid reasons to discount Ms. M.'s allegations. ECF No. 25 at 6. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

The ALJ found Ms. M.'s medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Ms. M.'s statements concerning the intensity, persistence and limiting effects of her symptoms are not

entirely consistent with the medical evidence and other evidence in the record. Tr. 3655. Some of the reasons given by the ALJ include: (1) the allegations of limiting pain are not supported by objective findings; (2) performance on physical exams does not corroborate the allegations of disabling physical functioning; (3) the migraine evidence does not reflect severely limiting migraines; (4) Ms. M.'s work history and evidence the ability to work despite impairments suggests symptoms are less severe; (5) the psychological expert testified that the mental health record is riddled with inconsistencies; (6) treatment notes reflect minimal or mixed psychiatric symptoms; (7) the record indicates greater mental symptoms correlated with situational stressors; (8) mental status exam results are inconsistent with extremely limiting mental health symptoms; (9) statements about alcohol use suggest the intensity and persistence of her symptoms is less limiting than alleged; (10) she stopped working in 2018 for reasons unrelated to her impairments. Tr. 3655-2661.

Ms. M. argues the ALJ erred by (1) discounting migraine allegations; (2) finding mental status exam results inadequately severe; (3) taking Dr. Rubin's statement out of context; and (4) incorrectly relying on statements about bathroom needs. ECF No. 15, 26. While this matter is remanded on other grounds, the Court reviews these arguments to consider whether an award of benefits may be justified.

*a. Migraines*

The ALJ considered records which document some complaints of migraines and headaches with treatment. Tr. 3657 (citing e.g., Tr. 2209, 2859, 2867, 2878). The ALJ observed there were no findings consistent with significantly limiting headaches and her physical exams documented no observations consistent with limiting pain from headaches; rather, these exams found Ms. M. to be alert and in no distress. *Id.* Dr. Berger reviewed the record and testified that there are no neurological records regarding complaints of migraines, and he assessed only migraine trigger precautions as the only limitation related to migraines. Tr. 3700. At the hearing, Ms. M.'s representative asked whether, given the diagnoses of migraines in the record, it would be reasonable for her to stay home and rest on days she has migraines, which she testified was a couple of days per month. *Id.* The ALJ noted that Dr. Berger explained that would be reasonable provided she complied with recommended treatment including abortive medications and preventative measures. *Id.* The ALJ concluded that excessive absenteeism is speculative based on the evidence and adopted Dr. Berger's limitation of migraine precautions in the RFC.

Ms. M. criticizes three aspects of the ALJ's finding: (1) the ALJ referenced findings of alert and in no distress, which has little to do with headache allegations; (2) the ALJ failed to consider that a neurology consult was pending at the end of the requested closed period in 2020 (Tr. 3053); and (3) the record reflects Ms. M. tried several medications that failed. ECF No. 15 at 10-12. Findings that a patient is alert

and in no distress are not particularly relevant, and it is not necessarily reasonable to expect that a patient would present at an office visit with symptoms during a migraine. The absence of objective findings at appointments is not a sufficient basis to reject testimony regarding the severity of migraine symptoms. However, Ms. M.'s second and third points do not reflect any error by the ALJ. The ALJ and Dr. Berger considered the entire record, not just the record until Ms. M.'s requested closed period at the end of 2020. Although the records cited by the ALJ indicate Ms. M. tried several medications, there is no evidence that failure of a few medications established that treatment is ineffective. On the contrary, Dr. Berger's testimony suggests that failure of treatment is not established by the record.

*b. Dr. Rubin's Statement*

Ms. M. contends the ALJ improperly took a statement from Dr. Rubin, the psychological expert, out of context. ECF No. 26 at 6. Dr. Rubin testified "there's been tremendous inconsistency in this record" when discussing the listings. Tr. 3693. The ALJ quoted Dr. Rubin's statement that Ms. M. has "shown a tremendous amount of resilience." Tr. 3657, 3693. The ALJ then stated, "This record is riddled with inconsistencies." Tr. 3657. The ALJ noted that Dr. Rubin opined that she would meet mental listings at times but then indicated that he believes other times she was holding it together, and otherwise summarized Dr. Rubin's testimony. *Id.* Ms. M. complains that the ALJ took the inconsistency and resilience statements out of context. ECF No. 15 at 13-14. The Court disagrees. The ALJ fairly summarized Dr.

Rubin's testimony, including the statements following the inconsistency statement. This does not constitute a basis for an award of benefits.

*c. Access to Restroom*

Ms. M. contends the ALJ erred in evaluating the statement on the March 2020 Function Report that she constantly needed to use the restroom. ECF No. 15 at 14. The ALJ noted Ms. M. alleged she has a constant need to use the bathroom (Tr. 2168), but no treatment records document any complaints involving genitourinary frequency, urgency, or incontinence; rather, treatment records indicate she denied the same (e.g., Tr. 697, 719, 971, 3604). Tr. 3659. In December 2013, Ms. M. had urinary incontinence, but it was related to stress, and a month later Ms. M. attributed it to an assault. *Id.* (citing Tr. 2551, 2545). Ms. M. argues the ALJ failed to acknowledge that her function report states she constantly needs to use the restroom due to a medication side effect, and points out she was on hydralazine at the time, Tr. 2175, for which urinary frequency is a recognized side effect, although the effects lessen over time. ECF No. 15 at 14 (citing Mayo Clinic website). To the extent the ALJ considered this evidence an inconsistency in the record overall, the finding is not supported by substantial evidence. However, the ALJ's finding reasonably addresses the alleged symptom and suggests a basis supported by the record for not including a restroom restriction in the RFC finding.

*d. Mental Status Exams*

Ms. M. contends the ALJ erred by finding mental status exams inadequately severe. ECF No. 26 at 6. The ALJ found her performance on mental status exams is inconsistent with her allegations of extremely limiting mental health symptoms. Tr 3658. The ALJ cited numerous mental status exams in the record, noting examples and certain findings. Tr. 3658-59 (citing e.g., Tr. 546, 651, 661, 759, 795, 800-01, 849, 1074, 1089, etc.). The ALJ discussed MSE findings of opining providers Stolzenbach (normal fund of knowledge, normal attention and concentration, intact memory, normal thought processes, citing e.g., Tr. 1262-69, 2314-15), Williams (no issues with memory or concentration, Tr. 728), Dunbar (intact memory and attention span, Tr. 2328, 3045, 3143, 3147), and Cline (no deficits of memory or concentration, Tr. 2199). The ALJ's findings regarding the MSEs as discussed are supported by the record. Plaintiff points to other evidence in the record demonstrating abnormalities; the ALJ acknowledged and addressed that there are other psychiatric findings, some of which are mixed, including findings such as anxious, stressed, sad, tearful, and frustrated. Tr. 3658. Furthermore, the ALJ did not find that Ms. M. has no mental limitations; the ALJ accounted for the limitations the ALJ found to be supported in the RFC.

Nevertheless, the ALJ does not acknowledge some of the most severe findings in the record regarding suicidal ideation, homicidal ideation, and self-harming. *See,* e.g., Tr. 800 (June 2103), 847 (July 2014), 852 (May 2014), 867 (August 2014), 1338 (June 2016), 2199 (December 2017), 2364 (June 2019), 3147 (May 2021). On

remand, the ALJ should ensure that the breadth of Ms. M.'s mental health symptoms are considered. And, while the ALJ's findings regarding her work history are supported, the ALJ should consider that there was nearly a five-year period from the alleged onset date in December 2012 until she re-commenced work in 2017. Although the ALJ found there was no evidence of improvement that would account for her later ability to work, the ALJ does not appear to have considered the potential impact of waxing and waning of mental health symptoms on the mental health record and should do so on remand.

4. Medical Opinions

Ms. M. contends the ALJ erred by discounting the opinions of the providers who evaluated her psychological functioning. ECF No. 15 at 15. According to Ms. M., the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Stephen Rubin, Ph.D., C. Donald Williams, M.D., Susan Stolzenbach, PMHMP, Starla Stone, LICSW, Elizabeth Dunbar, ARNP, R.A. Cline, Psy.D. She argues there are no conflicting opinions and an award of benefits is appropriate. ECF No. 26 at 3. The Commissioner agrees the ALJ's reasons for discounting the opinion of Starla Stone, LICSW are improper, but contends the ALJ reasonably found the remaining psychological opinions unpersuasive because they lacked sufficient support, conflicted with other evidence in the record, and with Plaintiff's work activities. ECF No. 25 at 6.

As noted above, the Commissioner concedes the ALJ's reasons for giving little weight to the opinion of LICSW Stone are erroneous. The ALJ relied on reasons previously found by this Court to be inadequate in rejecting Ms. Stone's opinion. With respect to the other opinions Ms. M. argues were improperly considered, the Court notes the ALJ considered Ms. M.'s work history and/or the mental status exam findings in finding several of the opinions inconsistent with the record. Having instructed the ALJ to more fully evaluate both findings in the context of the greater record, particularly the record before Ms. M. worked in 2017, the ALJ should also reevaluate the medical opinions in the same context.

## CONCLUSION

The parties agree the ALJ's decision is not supported by substantial evidence. Remand for further proceedings is the appropriate remedy. On remand, the ALJ should reconsider the medical and psychological opinion evidence and Ms. M.'s symptom testimony in accordance with this Order.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Brief, **ECF No. 15**, is **GRANTED** in part and **DENIED** in part. It is granted in part regarding Plaintiff's request to remand. It is denied in part regarding Plaintiff's request the Court remand to award benefits.

2. Defendant's Brief Requesting Remand, **ECF No. 21**, is **GRANTED**.

3. This case is **REVERSED** and **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

4. On remand the ALJ shall: (a) reassess all the medical opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1527, 416.927; (b) reevaluate Plaintiff's RFC; and (c) offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for the Plaintiff and the file shall be **CLOSED**.

**DATED** October 6, 2026.

REBECCA L. PENNELL
United States District Judge